IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| TRIP MATE, INC., formerly known as Trip Mate Agency, Inc., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 10-0793-CV-W-ODS |
| STONEBRIDGE CASUALTY INSURANCE COMPANY, et al., | ) ) ) ) | |
| Defendants. | ) | |

<u>ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS AND DIRECTING PLAINTIFF TO FILE AN AMENDED
COMPLAINT</u>

Pending is Defendants' Motion to Dismiss for Failure to State a Claim. Defendants' arguments and Plaintiff's responses have also combined to raise jurisdictional problems. For the following reasons, the motion (Doc. # 10) is granted in part and denied in part, and Plaintiff is directed to file an Amended Complaint.

<u>I.  BACKGROUND</u>

According to the Complaint, Plaintiff is in the business of providing travel insurance policies to travel organizations (such as travel agencies). Defendants are insurance companies that provide travel insurance. In March 2004, Plaintiff and Defendants entered a Managing General Agent Agreement ("Managing Agreement") that, among other things, empowered Plaintiff "to market, underwrite, and service the travel insurance policies" on Defendants' behalf. In November 2009, the parties entered a Termination Agreement that – as the name suggests – terminated the Managing Agreement effective December 31, 2009. However, three portions of the Managing Agreement survived: Articles C, D, and E, which related to Premium Collection, Claim Payment and Administration, and Complaints/Inquiries and Litigation, respectively.

Plaintiff alleges that while the Managing Agreement was in effect, it "utilized a rate modification tool whereby a travel organizations' premium rate was adjusted based on the claims experience for a given premium year." Complaint, ¶ 17. This "rate modification tool" has been described as a form of profit sharing, whereby a portion of the premiums collected were paid back to the travel organizations, based on the amount of claims that were made. However, with the Managing Agreement's termination, "Plaintiff no longer maintained sufficient bank account balances on behalf of the Defendants from which the profit sharing monies due the travel operators could be paid by Plaintiff." Complaint, ¶ 19. On or about July 12, 2010, Plaintiff advised Defendants of the travel organizations that had profit sharing provisions in their contracts; at the time, only three qualified for payments. Plaintiff paid $100,000 toward the amount owed one of those organizations, and asked Defendants to (1) pay the balance owed to the three organizations and (2) reimburse Plaintiff for the $100,000 it had paid. Defendants declined.

Plaintiff has styled its suit as one seeking declaratory judgment. It specifically seeks an order that

- clarifies and resolves whether Plaintiff had the authority under the Managing Agreement to enter the profit sharing agreements on Defendants' behalf,
- determine whether Defendants are obligated to reimburse Plaintiff for the $100,000 it advanced to one of the organizations, and
- determine whether Defendants are obligated to pay the remainder of the amounts due to the travel organizations.

## II. DISCUSSION

As stated earlier, the Complaint presents jurisdictional problems. While the parties did not specifically raise these issues, they have discussed them without formally identifying them as jurisdictional issues. Moreover, the Court has an independent obligation to insure it has jurisdiction, and is required to consider the issue on its own even if it is not raised by the parties.

"It is well settled that the declaratory judgment statute is strictly remedial in nature and does not provide a separate basis for subject matter jurisdiction." First Federal Savings & Loan Ass'n v. Anderson, 681 F.2d 528, 533 (8th Cir. 1982). One of the jurisdictional prerequisites for bringing any suit – including one seeking declaratory relief – is standing. See Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 10-11 (2004). Standing consists of (1) a list of constitutionally-compelled requirements and (2) various prudential doctrines. Id. at 11-12. The constitutional minimum consists of "an injury in fact, meaning the actual or imminent invasion of a concrete and particularized legal interest; a causal connection between the alleged injury and the challenged action of defendant; and a likelihood that the injury will be redressed by a favorable decision of the court." Sierra Club v. Kimbell, 623 F.3d 549, 556 (8th Cir. 2010). Plaintiff lacks standing to seek the first and third components of the relief it seeks.

Plaintiff has no injury in fact arising from the doubt about its authority to enter profit sharing agreements on Defendants' behalf or from Defendants' refusal to pay the travel organizations. If money is owed to the travel organizations, then the travel organizations have an injury – but Plaintiff does not. The Complaint suggests Plaintiff "may be subject to lawsuits of the travel organizations for the balances each is owed," Complaint, ¶ 23, but no suit is currently pending. Suits may be filed against Plaintiff – but then again, they may not. If they are filed, Plaintiff could then file a third-party complaint against Defendants. The travel organizations could also file suit against Defendants, meaning no suits are ever filed against Plaintiff. The possibility of suit is not imminent, so Plaintiff does not have the requisite injury upon which to base standing.

Plaintiff has standing to seek recovery of the money it has paid. It allegedly paid $100,000 on Defendants' behalf and seeks repayment – this is an actual injury. However, Plaintiff the appropriate relief is not declaratory in nature; the appropriate relief would be a judgment in the amount of $100,000. This judgment could be based

3

on the parties' contracts or on a quasi-contract theory (such as unjust enrichment).[1] Such a theory must underlie Plaintiff's request for declaratory relief (because, as stated earlier, declaratory relief provides a remedy and not a cause of action), and inasmuch as Plaintiff wants a monetary judgment, Plaintiff should assert a claim seeking such relief.

On or before January 5, 2011, Plaintiff shall file an Amended Complaint setting forth its legal claim(s) entitling it to a $100,000 judgment against Defendants. To the extent a claim is premised on the parties' agreements, the Amended Complaint should specify the provisions supporting the claim. Plaintiff should take the opportunity to insure the Amended Complaint contains the specificity required to comply with the Supreme Court's decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). Finally, the Amended Complaint should specify the provisions (and include as an exhibit) of the relevant profit sharing agreement.

IT IS SO ORDERED.

                                              /s/ Ortrie D. Smith
                                              ORTRIE D. SMITH, JUDGE
DATE: December 13, 2010                UNITED STATES DISTRICT COURT

---

[1] Resolving either of these claims may require the Court to address Defendants' authority under the Management Agreement. However, this route to the issue is different from the wide-ranging declaratory relief sought by Plaintiff.