IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| TRIP MATE, INC., formerly known as Trip Mate Agency, Inc., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 10-0793-CV-W-ODS |
| STONEBRIDGE CASUALTY INSURANCE COMPANY, et al., | ) ) ) ) | |
| Defendants. | ) | |

ORDER AND OPINION DENYING
DEFENDANT'S MOTION TO DISQUALIFY COUNSEL

Pending is Defendant's Motion to Disqualify, which seeks an order disqualifying counsel for Unique Vacations, Inc.. The motion (Doc. # 101) is denied.

In August 2010, Trip Mate sued Stonebridge, Transamerica Life Insurance Company and Work First Casualty Company (formerly Monumental General Casualty Company) in connection with profit sharing obligations alleged to exist in certain contracts. The defendants sued by Trip Mate are "sister companies" in what is described by them as "the AEGON family."

In October 2011, Unique Vacations ("Unique") filed suit against Trip Mate seeking amounts allegedly owed to it under those same profit sharing obligations. In November, Trip Mate filed a Third Party Complaint against Stonebridge, contending any amounts it owed Unique were owed to it by Stonebridge. The two lawsuits were consolidated in December. In February 2012, Unique sought leave to file an Amended Complaint so it could add Stonebridge as a defendant. The motion was granted and the Amended Complaint was filed on March 20.

Unique is represented by the law firm of Greenberg Traurig, LLP ("GT"). Tom Bond, an attorney at GT, has performed legal work for Transamerica on regulatory matters. Unique also admits Bond performed "a minimal amount of legal work for

Stonebridge." Specifically, Bond performed the following amount of work for Stonebridge in the following months:

- 1.2 hours in December 2009
- 0.2 hours in January 2010
- 0.4 hours in February 2010
- 0.6 hours in December 2011

Bond is not involved in this lawsuit, and it does not appear that GT or Bond represented any AEGON family member on matters related to this lawsuit. Paul Latchford is the Vice President of Law and Government Affairs for various members of the AEGON family, including Stonebridge and Transamerica. In that capacity, Latchford has worked with Bond during the course of Bond's representation. Latchford is also a fact witness in this litigation.

Motions to disqualify counsel are subject to particularly strict scrutiny because of their potential for abuse. E.g., Macheca Transport Co. v. Philadelphia Indemnity Co., 463 F.3d 827, 833 (8th Cir. 2006) (citing cases). The Court applies the Code of Professional Responsibility adopted by the Missouri Supreme Court. Local Rule 83.5(c)(2). With exceptions that need not be discussed here,[1] Rule 4-1.7 provides that a lawyer "shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if the representation of one client will be directly adverse to another client." The paramount issue in resolving the pending motion is ascertaining who GT's clients have been, and when.

GT has performed legal work for Stonebridge, but Stonebridge was not a client when GT filed the Amended Complaint. It was not until February 2012 at the earliest that GT's present client (Unique) became adverse to Stonebridge. By then, Stonebridge was a former client. Attorneys may represent parties adverse to former clients so long as the matters are not substantially related, Mo. Rule 4-1.9, but the work GT did for Stonebridge has nothing to do with the present suit. Stonebridge insists that

---

[1] In light of the Court's discussion, the Court declines to address GT's arguments regarding the alleged waiver of conflicts.

2

Case 4:10-cv-00793-ODS   Document 136   Filed 09/24/12   Page 2 of 4

it was obvious before February 2012 that Unique would become adverse to Stonebridge, but this is not necessarily the case. The possibility certainly existed, but it was not inevitable that Unique would add Stonebridge as a defendant.

Defendants also argue that GT's representation of Unique violates Rule 4-1.7 because GT performed work for other members of the AEGON family. The Court does not agree this is a sufficient reason to disqualify GT. Comment 34 to Rule 4-1.7 provides the following guidance:

> [T]he lawyer for an organization is not barred from accepting representation adverse to an affiliate in an unrelated matter, unless the circumstances are such that the affiliate should also be considered a client of the lawyer, there is an understanding between the lawyer and the organizational client that the lawyer will avoid representation adverse to the client's affiliates, or the lawyer's obligations to either the organizational client or the new client are likely to limit materially the lawyer's representation of the other client.

The circumstances do not persuade the Court that GT's work for Transamerica bars GT from taking actions adverse to Stonebridge. The two entities are different companies, and they sell different kinds of insurance: Stonebridge is a property and casualty insurer, and Transamerica issues life insurance policies. There is no suggestion that Bond's work for Transamerica was applicable to Stonebridge in any way.

Defendants have gone to great lengths to demonstrate their dissatisfaction with GT. However, they have not suggested an understanding between GT and Transamerica (or anyone else) that GT's representation of Transamerica would prevent GT from representing parties adverse to Transamerica's "sister entities." Finally, (1) the regulatory matters that Bond worked on for Transamerica are not likely to limit GT's ability to represent Unique, and (2) representation of Unique should not limit GT's ability to represent Transamerica. The facts do not persuade the Court that GT became the lawyer for all members of the AEGON family simply by doing work for one of them.

Defendants' sentiments express a sense of unhappiness and betrayal. Certainly, Defendants are free to refrain from retaining GT in the future. In addition, the parties are cautioned that the Court's ruling has no application or force outside of this lawsuit: while the Court declines to disqualify GT, nothing prevents the appropriate disciplinary

3

authorities from reaching a different conclusion about GT's conduct (either with or without a more complete investigation of the matter).

IT IS SO ORDERED.

                                          /s/ Ortrie D. Smith
                                          ORTRIE D. SMITH, SENIOR JUDGE
DATE: September 24, 2012          UNITED STATES DISTRICT COURT